FILED
9/9/24 2:11 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 24-21081-GLT |
| **ELLIOTT-TODD PARKER KOGER**, | Chapter 7 |
| *Debtor.* | |
| **ISAAC USOROH**, | |
| *Movant,* | Related to Dkt. Nos. 33, 41 |
| v. | |
| **ELLIOTT-TODD PARKER KOGER**, | |
| *Respondent.* | |

## MEMORANDUM OPINION

A wise judge once mused that it is not the bankruptcy court's job to grade the state court's papers.[1]  Still, debtor Elliott-Todd Parker Koger ("Elliott") asks this Court to do just that. Isaac Usoroh acquired the Koger family home in a sheriff's sale and now seeks stay relief to gain possession.  Elliott opposes the motion by collaterally attacking the validity of the state court proceedings that adversely adjudicated his rights in the property.  Mr. Usoroh asserts that the sheriff's sale and a prepetition judgment for possession conclusively extinguished Elliott's interest (if any) in the property, justifying stay relief.  The Court agrees and will grant the motion.

---

[1] The Hon. M. Bruce McCullough was a bankruptcy judge in this Court from 1995-2010 and served as its chief judge from 2005-2009.

I.    **BACKGROUND**

Elliott's father, Todd Elliott Koger Sr. ("Todd Sr."), purchased property located at 515 Kelly Avenue, Pittsburgh, PA 15221 in 1999.[2] Over the next twenty-five years, the property has been entangled in litigation involving several members of the Koger family. This includes Todd Sr., his wife Kellie Dillard ("Kellie"), and their sons, Todd Elliot Koger Jr. ("Todd Jr.") and Elliott.[3] Elliott's current bankruptcy petition is the most recent installment in a series of seven bankruptcy cases initiated by members of the Koger family.[4] A common theme in these cases is the continuous recharacterization of the property's ownership.[5] Unsurprisingly, the judicial reception to the filings has not been kind.[6]

All of the litigation stems from a tax lien levied against the property by the Wilkinsburg School District in July 2005.[7] And for many years, the Kogers' serial bankruptcy filings prevented Wilkinsburg from collecting on that tax debt.

After a long and procedurally tortuous history,[8] a state court order was issued in July 2022 directing that the property be sold at a sheriff's sale.[9] A month later, the property was

---

[2]    The Court takes judicial notice of a deed dated November 18, 1999, from Andrew M. Cuomo, Secretary of Housing and Urban Development, to Todd-Elliott Koger, on record with the recorder of deeds of Allegheny County, Pennsylvania, and recorded on December 20, 1999, at DVB No. 10656 pg. 173.

[3]    Due to the fact that Todd Sr., Todd Jr., and Elliott all have similar names, this Court will use the first names of the parties to avoid any confusion. No disrespect is intended.

[4]    This is also Elliott's first bankruptcy. See Case Nos. 04-24229-BM (Kellie), 05-23146-BM (Todd Sr.), 07-25165-BM (Todd Jr.), 10-27397-BM (Todd Sr.), 12-21075-JAD (Kellie), 16-21143-CMB (Todd Jr.), 20-23340-TPA (Todd Sr.), and 24-21081-GLT (Elliott).

[5]    A comprehensive recounting of the Kogers' various positions in regard to the Property's ownership will not be undertaken here. For a thorough history of these past bankruptcies, see In re Koger, 630 B.R. 1, 4-5 (Bankr. W.D. Pa. 2021).

[6]    See e.g., id. at 2-3 (Judge Thomas P. Agresti likened the process of dealing with then-debtor Todd Sr. and the Koger family's various filings to a game of "Whack-a-Mole").

[7]    *Municipal Lien*, GD-05-018165, Dkt. No. 1. The lien was filed due to unpaid school taxes for the years 2001-2002.

[8]    A full discussion of the tax lien action would be far beyond the scope of this *Memorandum Opinion*.

[9]    *Order of Court*, GD-05-018165, Dkt. No. 94.

sold to Mr. Usoroh for $51,000.[10]  Title passed to Mr. Usoroh by a sheriff's deed recorded on August 30, 2022.[11]  But when Mr. Usoroh tried to enter the property in September 2022, he was allegedly confronted by Todd Sr., who claimed that he was still the owner.[12]

Mr. Usoroh filed an ejectment action against Todd Sr. and Todd Jr.[13]  During the proceeding, it became clear that Todd Jr. did not occupy the property, but Elliott did.[14]  On August 9, 2023, the state court entered an order dismissing Todd Jr. as a defendant for that reason,[15] and it awarded Mr. Usoroh possession as against Todd Sr.[16]  As a result of the confusion, Mr. Usoroh filed a second ejectment action in August 2023 naming Elliott and any other occupants of the property as defendants.[17]  A non-jury verdict was entered on March 28, 2024,[18] and a subsequent judgment for possession was entered against Elliott on April 19, 2024.[19]  Days later, Mr. Usoroh filed a praecipe for a writ of possession,[20] prompting Todd Sr. to file a slew of appeals with the Superior Court of Pennsylvania.  Elliott did not appeal.

Without a state court order staying the ejectment, Elliott filed a *pro se* petition for chapter 7 bankruptcy relief on May 3, 2024.[21]  Mr. Usoroh now moves for stay relief to enforce

---

[10]    *Exhibit A*, Dkt. No. 33-1.

[11]    Id.

[12]    See *Motion for Determination of No Automatic Stay, or in the Alternative, Motion for Relief from the Automatic Stay, Pursuant to 11 U.S.C. § 362(d)*, Dkt. No. 33 at ¶ 9; see *Opinion*, GD-22-013385, Dkt. No. 76 at 5 (stating that Todd Sr. refused to turn over possession after the sheriff's sale).

[13]    *Ejectment Complaint*, GD-22-013385, Dkt. No. 1.

[14]    *Opinion*, GD-23-009672, Dkt. No. 75 at 3 (explaining that the second ejectment action was initiated once it became clear that Elliott lived at the property, but Todd Jr. did not).

[15]    *Order of Court*, GD-22-013385, Dkt. No. 66 at ¶ 2.

[16]    Id. at ¶ 1.

[17]    *Ejectment Complaint*, GD-23-009672, Dkt. No. 1.

[18]    *Non-Jury Verdict*, GD 23-009672, Dkt. No. 58.

[19]    *Judgment on Verdict*, GD 23-009672, Dkt. No. 66.

[20]    *Praecipe for Writ of Possession*, GD-23-009672, Dkt. No. 67.

[21]    *Chapter 7 Voluntary Petition*, Dkt. No. 1.

the judgment for possession.[22] At the hearing on the motion, the Court allowed the Kogers to expound on their position at length.[23] The arguments[24] advanced by Elliott (as this Court understands them) rely on some variation of the *Rooker-Feldman*[25] or issue preclusion doctrines.[26] He points to allegedly favorable decisions from the state courts[27] and the bankruptcy court[28] which he claims were unacceptably ignored during the sheriff's sale and ejectment proceedings. In Elliott's view, the failure to adhere to these prior decisions not only renders the sheriff's sale and judgment for possession void and non-binding on this Court,[29] but it makes him the rightful owner of the property.

At the end of the hearing, the Court held that it was bound by *Rooker-Feldman* to recognize the outcome of the state court execution proceedings and the judgment for possession, irrespective of any contradictions within the decisions cited by Elliott. Because Elliott lacked legal or equitable title to the property based on the sheriff's sale and judgment for possession, this Court

---

[22] See *Motion for Determination of No Automatic Stay, or in the Alternative, Motion for Relief from the Automatic Stay, Pursuant to 11 U.S.C. § 362(d)*, Dkt. No. 33.

[23] Even though Elliott is the debtor in this case, it became evident at the hearing that Todd Sr. was running the show. Elliott was largely unresponsive to this Court's questions, spoke no more than a few sentences, and mostly repeated phrases that were whispered into his ear by Todd Sr. Thus, any reference to the arguments advanced by Elliott should be understood in this context.

[24] These arguments are confusing, doctrinally suspect, and ultimately lacking in internal coherence. However, the Court will still attempt to address them.

[25] The *Rooker-Feldman* doctrine is named after two United States Supreme Court Cases. See Rooker v. Fidelity Tr. Co., 263 U.S. 413 (1923); and D.C. Ct. of Appeals v. Feldman, 460 U.S. 462 (1983).

[26] See generally *Response to Motion*, Dkt. No. 41; and *Memorandum Request to Vacate GD-05-18165 Judgment and Rule 12(f) Motion to Strike All Isaac Usoroh's Filings as "Personal Attacks" Filed in Support Elliott-Todd Parker Koger's Response*, Dkt. No. 46. These filing raise many of the same arguments.

[27] See *Response to Motion*, Dkt. No. 41 at ¶¶ 2-4, 7-9, 21 (Elliott appears to be referencing Koger v. Pennsylvania Housing Finance Agency, 302 A.3d 1272 (Pa. Commw. Ct. 2023) and *Order*, GD-05-018165, Dkt. No. 6).

[28] See id. at ¶¶ 2-3, 5 (referencing Judge Bernard Markovitz's *Order of Court*, Case No. 07-25165-BM, Dkt. No. 39, and In re Koger, 630 B.R. 1 (Bankr. W.D. Pa. 2021)).

[29] See *Memorandum Request to Vacate GD-05-18165 Judgment and Rule 12(f) Motion to Strike All Isaac Usoroh's Filings as "Personal Attacks" Filed in Support Elliott-Todd Parker Koger's Response*, Dkt. No. 46 at ¶¶ 1-3.

announced its intention to grant stay relief. In response, Elliott and Todd Sr. turned belligerent and proceeded to storm out of the courtroom. Elliott subsequently filed a notice of appeal.[30]

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## III. DISCUSSION

The automatic stay functions as one of the Bankruptcy Code's[31] "fundamental protections,"[32] providing the "honest but unfortunate debtor"[33] with a breathing spell from their creditors. The range of activity that falls within the scope of the automatic stay is broad and includes the continuation of any prepetition litigation pending against the debtor, the creation or enforcement of liens against estate property, and any acts to recover prepetition debts.[34] Even so, the injunctive effect of the automatic stay is not absolute. A party may seek stay relief under section 362(d) as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

---

[30] *Notice of Appeal to United States District Court for the Western District of Pennsylvania*, Dkt. No. 53.

[31] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, et seq. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[32] Midlantic Nat. Bank v. New Jersey Dep't of Env't Prot., 474 U.S. 494, 503, 106 S. Ct. 755, 760, 88 L. Ed. 2d 859 (1986); see also Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1074 (3d. Cir. 1992); Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.), 141 B.R. 574, 576 (Bankr. D. Del. 1992).

[33] Cnty. of Allegheny v. Cracked Egg, LLC (In re Cracked Egg, LLC), 624 B.R. 84, 89 (Bankr. W.D. Pa. 2021).

[34] See 11 U.S.C. § 362(a); see also Allentown Ambassadors, Inc. v. Ne. Am. Baseball, LLC (In re Allentown Ambassadors, Inc.), 361 B.R. 422, 435 (Bankr. E.D. Pa. 2007).

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization;[35]

Although "cause" under section 362(d)(1) is not defined by the Bankruptcy Code, courts are afforded broad discretion in deciding whether relief from stay is appropriate.[36] Perhaps rather obviously, cause exists when the debtor simply does not have an interest in the property at issue.[37] Likewise under section 362(d)(2), a debtor who does not own property automatically lacks equity, and property not owned by a debtor cannot possibly be necessary to an effective reorganization.[38] Although the moving party bears the initial burden of production to show cause under either subsection,[39] the debtor has the ultimate burden as to all issues other than equity.[40]

Mr. Usoroh asserted his entitlement to stay relief on the grounds that he purchased the property at a sheriff's sale and subsequently received a judgment for possession against Elliott.[41] Thus, it is Elliott's burden to show an interest in the property protected by the Bankruptcy Code. Of course, Elliott does have a bare possessory interest in the property because he resides

---

[35] 11 U.S.C. §362(d).

[36] See In re Bell, 476 B.R. 168, 179 (Bankr. E.D. Pa. 2012) (utilizing a "totality of the circumstances" test); see also In re Project Orange Assocs., LLC, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010) (discussing the variety of tests and factors employed by courts to determine whether cause exists).

[37] See JP Morgan Chase Bank v. Rocco (In re Rocco), 319 B.R. 411, 418-19 (Bankr. W.D. Pa. 2005).

[38] Regardless of *Rooker-Feldman*, reorganization is simply not contemplated under chapter 7. Nev. Nat'l Bank v. Casgul of Nev., Inc. (In re Casgul of Nev., Inc.), 22 B.R. 65, 66 (B.A.P. 9th Cir. 1982) (citing Ramco Indus. v. Preuss (In re Preuss), 15 B.R 896, 897 (B.A.P. 9th Cir. 1981)).

[39] See, e.g., In re Dupell, 235 B.R. 783, 788-89 (Bankr. E.D. Pa. 1999).

[40] 11 U.S.C. § 362(g).

[41] See generally *Motion for Determination of No Automatic Stay, or in the Alternative, Motion for Relief from the Automatic Stay, Pursuant to 11 U.S.C. § 362(d)*, Dkt. No. 33.

there. Yet a bare possessory interest without any legal or equitable title is not enough to justify a continued imposition of the stay.[42] Thus, the question becomes whether Elliott can meet his burden by showing a more substantial, protectable interest.

It is undisputed that a sheriff's sale of the property occurred in August 2022. Third Circuit precedent makes clear that any equitable interest Elliott may have had in the property would have been extinguished with the fall of the gavel at that sheriff's sale.[43] It is also undisputed that there was a judgment against Elliott as to possession.[44] As a result, the state courts have determined that Elliott lacks legal or equitable title to the property, and that any possessory interest he does have can be divested.

Elliot argues that he still owns the property, and that the sheriff's sale and the judgment for possession are somehow defective and non-binding on this Court. He also advances a novel reading of *Rooker-Feldman* which would require this Court to completely disregard the sheriff's sale and judgment for possession. According to his theory, those proceedings are void because they contradict previous judicial decisions which allegedly favored the Kogers in multiple ways.[45] Per Elliott's narrative, the state courts defied *Rooker-Feldman* by wrongly ignoring those

---

[42] Ciccozzi v. Butko (In re Butko), 617 B.R. 532, 536 (Bankr. W.D. Pa. 2020) (holding that a "bare possessory interest on the petition date without a colorable legal or equitable claim 'is not enough to sustain the protections of the automatic stay.'") (citing Crawford Square Cmty. v. Turner (In re Turner), 326 B.R. 563, 573 (Bankr. W.D. Pa. 2005)).

[43] See In re Peralta, 48 F.4th 178, 181 (3d Cir. 2022).

[44] *Judgment on Verdict*, GD 23-009672, Dkt. No. 66.

[45] Among other things, the Kogers contend that ownership of the property (whether title is held by Todd Jr. or Elliott) was conclusively established in their favor through the prior orders. See, e.g., *Response to Motion*, Dkt. No. 41. This argument assumes a transfer of ownership from Todd Jr. to Elliott, which has not been substantiated in the record.

7

prior decisions throughout the tax lien enforcement and ejectment proceedings, thus rendering the sheriff's sale and judgment for possession a nullity.[46]

*Rooker-Feldman* essentially provides that the federal district courts have no appellate jurisdiction over the decisions of state courts.[47] Stated another way, *Rooker-Feldman* prevents state court losers from seeking appellate review of their cases by federal district courts because the state judgment violated their federal rights.[48] The doctrine applies with equal force to bankruptcy courts.[49]

Importantly, *Rooker-Feldman* prevents this Court from questioning the rationale of state court judgments and outcomes.[50] This presents a rather obvious problem for Elliott, a state court loser whose arguments would necessarily require us to look behind, and reevaluate, state court proceedings. The alternative version of *Rooker-Feldman* he urges this Court to apply would essentially require it to ignore or unravel some state court outcomes to favor others. This is simply not how *Rooker-Feldman* works. Even if Elliott is correct about these various deficiencies,[51] it is of no matter: this Court is prevented from reaching the merits. The only option available to Elliott will be to exhaust his remedies through state court appellate process.

---

[46] See, *Memorandum Request to Vacate GD-05-18165 Judgment and Rule 12(f) Motion to Strike All Isaac Usoroh's Filings as "Personal Attacks" Filed in Support Elliott-Todd Parker Koger's Response*, Dkt. No. 46 at ¶¶ 1-6.

[47] See Rooker, 263 U.S. at 416; Feldman, 460 U.S. at 482-83.

[48] Lance v. Dennis, 546 U.S. 459, 460, 126 S.Ct. 1198, 1199, 163 L.Ed.2d 1059 (2006); see also Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1330 (11th Cir. 2010).

[49] See Knapper v. Bankers Tr. Co. (In re Knapper), 407 F.3d 573, 581 (3d Cir. 2005).

[50] See Feldman, 460 U.S. at 483-86 (recognizing that federal district courts lack subject matter jurisdiction over challenges to state court decisions even if those challenges allege unconstitutional action by the state court) (citing Doe v. Pringle, 550 F.2d 596, 597 (10th Cir. 1976)).

[51] This is doubtful, especially in light of the fact that Elliott felt the need to selectively characterize and edit these allegedly favorable decisions. Compare *Order of Court*, Case No. 07-25165-BM, Dkt. No. 39 at ¶ 6 (characterizing one of Todd Jr.'s bankruptcies, filed when he was only eleven years old, as a "sham" filed on his behalf by Todd Sr. and Dillard), with *Response to Motion*, Dkt. No. 41 at 14-15 (omitting entirely the portion of that order where Judge Bernard Markovitz characterized the bankruptcy as a "sham").

Since a debtor's lack of any legal or equitable interest in property is sufficient cause for relief from the stay,[52] and this Court is compelled by a proper reading of *Rooker-Feldman* to refrain from weighing in on state court proceedings which have definitively determined Elliott's lack of legal or equitable title to the property, stay relief must be granted under both sections 362(d)(1) and 362(d)(2). Elliott has failed to meet his burden, and nothing he could produce would change the fact that this Court is bound by *Rooker-Feldman* to recognize the actions of the state courts.

In a final effort, Elliott suggests he can avoid the sheriff's sale as a fraudulent transfer under section 522(h) of the Bankruptcy Code.[53] Putting aside the fact that the right to bring an avoidance action would be held by Elliott's bankruptcy estate rather than him personally,[54] there is simply no evidence that Elliott ever owned the property. Elliott's own filings scarcely suggest that he is the owner, and his arguments instead focus more on the ownership interest held by Todd Jr. To bridge the gap, Elliott needed to establish an ownership interest held by Todd Jr. that was later assigned to him. If any such transfer occurred, the Court was presented with no record of it. Without a deed or other cognizable evidence of ownership,[55] Elliott lacks the necessary standing to avoid a fraudulent transfer in place of a trustee. Thus, this argument also fails.

---

[52] See In re Rocco, 319 B.R. at 418.

[53] See generally *Section 522(h) of the Bankruptcy Code Motion*, Dkt. No. 68; *Brief in Support Section 522(h) Motion*, Dkt. No. 69.

[54] The chapter 7 trustee, not the debtor, has standing to pursue a fraudulent transfer action on behalf of the estate, except in certain circumstances. See 11 U.S.C. §§ 522(h), 548(a)(1)(B); see e.g., In re U Lock, Inc., 652 B.R. 456, 458 (Bankr. W.D. Pa. 2023), aff'd sub nom. Snyder v. U Lock Inc., No. 23CV1410, 2024 WL 69628 (W.D. Pa. Jan. 5, 2024) (a creditor purchased the estate's right to bring a fraudulent transfer action from the chapter 7 trustee through an asset sale).

[55] This is certainly not the first time that the lack of a deed substantiating the Kogers' various assertions of ownership has proven problematic. See In re Koger, 630 B.R. 1, 5 (Bankr. W.D. Pa. 2021).

## IV. CONCLUSION

The Motion is hereby granted for the reasons stated above. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania

Dated: September 9, 2024

_____ cgr
**GREGORY L. TADDONIO**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Case administrator to mail to:
Debtor
Todd Elliott Koger, Sr.