FILED
9/30/25 3:36 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Case No. 20-23340-GLT |
| | : | Chapter 7 |
| **TODD ELLIOTT KOGER,** | : | |
| | : | Related to Dkt. Nos. 125, 137, 147, 186 |
| *Debtor.* | : | |
| | : | |

| | | |
|---|---|---|
| In re: | : | Case No. 24-21081-GLT |
| | : | Chapter 7 |
| **ELLIOT-TODD PARKER KOGER,** | : | |
| | : | Related to Dkt. Nos. 44, 46, 51, 68, 75, 86, |
| *Debtor.* | : | 87, 123, 125 |
| | : | |

| | | |
|---|---|---|
| **ELLIOT-TODD PARKER KOGER,** | : | Adv. Pro. No. 24-2040-GLT |
| **TODD ELLIOTT KOGER, SR., and** | : | |
| **THE KOGER FAMILY,** | : | |
| | : | |
| *Plaintiffs,* | : | Related to Dkt. Nos. 4, 17, 20, 28, 30, 37, |
| | : | 43, 58, 59 |
| v. | : | |
| | : | |
| **ISAAC USOROH,** *et al,.* [1] | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

Renee M, Kuruce, Esq.
Robleto Kuruce, PLLC
Pittsburgh, PA
*Attorney for Isaac Usoroh*

Joseph P. Schalk Esq.
Office of the United State Trustee
Pittsburgh, PA
*Attorney for the United States Trustee*

Rosemary C. Crawford, Esq.
Crawford McDonald, LLC
Allison Park, PA
*Chapter 7 Trustee*

Keri P. Ebeck, Esq.
Bernstein-Burkley
Pittsburgh, PA
*Attorney for Duquesne Light Company*

Paul D. Krepps, Esq.
Marshall Dennehey, PC
Pittsburgh, PA
*Attorney for the Borough of Wilkinsburg, Marc V. Taiani, and Michael Lefebvre*

Maribeth Thomas
Tucker Arensberg PC
Pittsburgh, PA
*Attorney for Wilkinsburg School District*

## MEMORANDUM OPINION

---

[1]    The other defendants include: the Pennsylvania Homeowners Assistance Fund PAHAF 19868; Wilkinsburg School District; Borough of Wilkinsburg; Marc V. Taiani (former Wilkinsburg Councilman); Michael Lefebvre (former Wilkinsburg Councilman); Allegheny County; and Duquesne Light Company.

Todd Elliott Koger ("Todd Sr.") and his son, Elliott-Todd Parker Koger ("Elliott," with Todd Sr., the "Kogers"),[2] have flooded the Court with a deluge of pleadings seeking relief *pro se* under various theories in hopes of saving their family home.[3]  Having fought to avoid its loss for nearly 20 years and now facing ejectment following a sheriff's sale, they find themselves increasingly boxed in by unfavorable judgments.  Yet the Kogers remain defiant, arguing that some adverse rulings are invalid and others, more surprisingly, are not actually adverse.  Frankly, their arguments are disjointed, contradictory, and incoherent, to say nothing of the gross mischaracterizations of prior court proceedings upon which they rely.  For the reasons set forth below, the Court cannot provide Todd Sr. or Elliott *any* relief in the above-captioned cases, let

---

[2]     Given that this case involves three similarly named individuals—Todd Elliott Koger and his sons Todd Elliott Koger and Elliott-Todd Parker Koger—clarity requires the Court to identify them by their first names.  No disrespect is intended.

[3]     **In Todd Sr.'s Case**: See *Section 522(h) of the Bankruptcy Code Motion to Reopen*, Case No. 20-23340-GLT, Dkt. No. 125; *Request for Reinstatement of 11 U.S.C. § 362 Stay; Joinder 24-02040-GLT and Stay of 24-21081-GLT4; and Request for Order to Nullify Sheriff's Sale*, Case No. 20-23340-GLT, Dkt. No. 137; *11 U.S.C. § 324 Motion Invoking the Catch-all Misconduct Provision of 11 U.S.C. § 101(11)(14)(E) (sic); Request for Reinstatement of 11 U.S.C. § 362 Stay; Joinder of 24-02040-GLT and Stay of 24-21081-GLT; and Request for Order to Nullify Sheriff's Sale*, Case No. 20-23340-GLT, Dkt. No. 147; *Motion to Consolidate the Reopened Bankruptcy Case No. 20-23340-GLT into Adversary Proceeing No. 24-2040-GLT*, Case No. 20-23340-GLT, Dkt. No. 186.  **In Elliott's Case**:  See *Memorandum Request to Vacate GD-05-18165 Judgment and Rule 12(f) Motion to Strike All Isaac Usoroh's Filings as "Personal Attacks" Filed in Support Elliott-Todd Parker Koger's Response*, Case No. 24-21081-GLT, Dkt. No. 46; *Sworn Declaration as Response to Usoroh's Motion the Dispute Here is Legal Rather than Factual There are No Material Facts in Dispute*, Case No. 24-21881-GLT, Dkt. 51; *Section 522(h) of the Bankruptcy Code Motion*, Case No. 24-21081-GLT, Dkt. No. 68; *Motion for Reconsideration of August 15, 2024 Order (sic) Record Has Confused the Pro Se Litigants of the Scheduling (sic)*, Case No. 24-21081-GLT, Dkt. No. 75; *PAHAF 69522 Bankruptcy Form*, Case No. 24-21081-GLT, Dkt. 86; M*otion for Reconsideration of September 9, 2024 Order (sic) Bankruptcy Court Mistakenly Cites PAHAF 19868 as State Issue*, Case No. 24-21081-GLT, Dkt No. 87; *Motion for Sanctions (Violation of the 11 U.S.C. § 362 Stay) Request for Injunctive Relief and Damages*, Case No. 24-21081-GLT, Dkt. No. 125.  **In the Adversary Proceeding**: See *Amended Complaint for Declaratory Judgment, Injunctive Relief, and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4; *Motion for Default Judgment*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 20; *Plaintiffs' Amended Motion for Summary Relief*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 43; R*eply to Respondent(s) Reponse Filed as a Section 502(a) Proof of Claim*, Adv. Pro. No. 24-2040-GLT, Dkt. 59.

alone what they have requested.  Therefore, the Court will dismiss the adversary proceeding and

Elliott's case with prejudice, and not reopen Todd Sr.'s case.[4]

## I.    BACKGROUND

The Koger family resides in real property located at 515 Kelly Avenue in

Wilkinsburg, Pennsylvania (the "Property").[5]    At various times, the household occupants

included Todd Sr., his wife Kellie Dillard, and sons Todd Elliott Koger ("Todd Jr.") and Elliott.[6]

As previewed above, the Property has been embroiled in litigation over unpaid real estate taxes

levied in July 2005.[7]    The Koger family vigorously fought the collection, execution, and

ejectment actions at all levels of the state court system and filed a string of eight bankruptcies

among them to stymy the litigation.[8]    Needless to say, the history is long and tortured so the

Court will endeavor to limit its recitation to only those details necessary to fairly frame the issues

presented.[9]

---

[4]    See *Motion, Pursuant to 11 U.S.C. § 707, to Dismiss Chapter 7 Case*, Case No. 24-21081-GLT, Dkt. No. 44; *Motion to Dismiss Amended Adversary Complaint Pursuant to F.R.C.P. 12(b)(6) and 12(b)(1)*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 17; *Motion to Join Motion to Dismiss Amended Adversary Complaint at ECF Doc. 17*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 58; see also *Isaac Usoroh's Response in Opposition to Plaintiffs' Motion for Default Judgment*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 28; *Response to Plaintiff's Motion for Default Judgment*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 30.

[5]    The mailing address for the property is 515 Kelly Avenue, Pittsburgh, Pennsylvania 15221.

[6]    The reference to "Todd Jr." is made simply to distinguish him from his father.  The Court acknowledges that, according to the Kogers, Todd Jr.'s legal name lacks a suffix.

[7]    *Municipal Lien*, GD-05-018165, Dkt. No. 1.  The lien was filed due to unpaid school taxes for the years 2001-2002.

[8]    See In re Kellie Odessa Dillard, Case No. 04-24229-BM; In re Todd Elliott Koger, Case No. 05-23146-BM (Todd Sr.); In re Todd Elliott Koger, Case No. 07-25165-BM (Todd Jr.); In re Todd Elliott Koger, Case No. 10-27397-BM (Todd Sr.); In re Kellie Odessa Dillard, Case No. 12-21075-JAD; In re Todd Elliott Koger, Case No. 16-21143-CMB (Todd Jr.); In re Todd Elliott Koger, Case No. 20-23340-TPA (Todd Sr.); In re Elliott-Todd Parker Koger, Case No. 24-21081-GLT (Elliott).  Todd Jr.'s first case was particularly noteworthy because he no more than 12 years old when it occurred.  In re Todd Elliott Koger, Case No. 07-25165-BM, Dkt. No. 39.

[9]    Efficiently reducing twenty-years of convoluted litigation to a few pages mandates a healthy gloss to the procedural history.  Because the overarching issue is the degree to which the Kogers' arguments are foreclosed, the Court will focus on topics and outcomes over establishing a strict chronology of events.

A central feature of every bankruptcy filing was that a different member of the Koger family would claim to be the Property's owner.[10]  Former Bankruptcy Judge Thomas P. Agresti, who presided over Todd Sr.'s 2020 case, likened the apparent strategy to "Whack-a-Mole."[11]  A noteworthy consequence of this approach was that Todd Jr. was about 12 years old at the time of his first bankruptcy.  Former Bankruptcy Judge Bernard Markovitz dismissed that case as a "sham," concluding that Todd Jr.'s parents were "using the bankruptcy case as an artifice to escape having to pay taxes due on the property in which they as well as their son reside."[12]

The title record reveals that the Property was conveyed to "Todd-Elliott Koger" in 1999.[13]  Todd Sr. and Elliott concede that is the only deed transferring the Property to a member of the Koger family.[14]  Still, the Kogers seize on a perceived ambiguity in the deed to contend that "Todd-Elliott Koger" was not Todd Sr., but a then four-year-old Todd Jr.  The utility of that

---

[10]  See *Schedule A – Real Property*, Case No. 04-24229-BM, Dkt. No. 1 at 6 (Dillard); *Schedule A – Real Property*, Case No. 05-23146-BM, Dkt. No. 1 at 6 (Todd Sr.); *Schedule A – Real Property*, Case No. 07-25165-BM, Dkt. No. 1 at 6 (Todd Jr.); *Schedule A – Real Property*, Case No. 10-27397-BM, Dkt. No. 1 at 4 (Todd Sr., Todd Jr., and Dillard as joint owners); *Schedule A – Real Property*, Case No. 12-21075-JAD, Dkt. No. 1 at 8 (Dillard, Todd Jr., and Todd Sr. as joint owners); *Schedule A/B: Property*, Case No. 16-21143-CMB, Dkt. No. 1 at 16 (Todd Jr. and "another"); *Schedule A/B: Property*, Case No. 20-23340-TPA, Dkt. No. 1 at 11 (Todd Sr.); *Schedule A/B: Property*, Case No. 24-21081-GLT, Dkt. No. 1 at 12 (Elliott and "another").

[11]  Koger v. Wilkinsburg School Dist. (In re Koger), 630 B.R. 1, 2 (Bankr. W.D. Pa. 2021).  As explained by Judge Agresti, "Whack-a-Mole" is "a term used colloquially to 'denote a repetitious and futile task – each time an adversary is 'whacked' it only pops up again somewhere else.'"  Id. at 2-3.

[12]  *Order of Court*, Case No. 07-25165-BM, Dkt. No. 39 at ¶ 6.

[13]  The Court takes judicial notice of a deed dated November 18, 1999, from Andrew M. Cuomo, Secretary of Housing and Urban Development, to Todd-Elliott Koger, on record with the recorder of deeds of Allegheny County, Pennsylvania, and recorded on December 20, 1999, at DVB No. 10656 pg. 173.  See Fed. R. Evid. 201(b)(2).

[14]  *Transcript of September 24, 2024 Hearing*, Dkt. No. 79 at 12:15-25.

assertion is that it would make Todd Jr. an unnamed indispensable party to the execution

proceedings, which they believe renders the entire process void.[15]

Todd Jr.'s purported ownership interest and its alleged procedural impact has

never gained traction with any court,[16] but that has not stopped the Kogers from claiming

otherwise.  Indeed, they stunningly argue that Judge Markovitz's dismissal order, which called

Todd Jr.'s case a "sham" and an "artifice" orchestrated by his parents,[17] somehow confirmed

Todd Jr.'s interest.[18]  After state courts disagreed, Todd Sr. asked Judge Agresti to intervene

based on a "reverse *Rooker-Feldman* doctrine."[19]  Judge Agresti, however, found that "there is

no prior judgment of this Court holding that the Debtor's Son is the owner of the Property."[20]

Perhaps predictably, the Kogers now cite Judge Agresti's decision as having determined, like

Judge Markovitz before him, that Todd Sr. "does not own the property."[21]

The  Kogers  also  maintain  that  the  Pennsylvania  Commonwealth  Court

conclusively determined Todd Jr. to be the Property's owner in a ruling that "absolved Todd

Elliott Koger Sr. from any liabilities regarding the tax debt. . . ."[22]  An examination of the case

tells a different story, albeit less blatantly than the bankruptcy rulings they rely on.  Basically,

---

[15]    See, e.g., *Sworn Declaration as Response to Usoroh's Motion the Dispute Here is Legal Rather than Factual there are no Material Facts in Dispute*, Dkt. No. 51 at ¶¶ 3-10.  It is noteworthy that Todd Jr., the party allegedly harmed by the exclusion, is not the one raising the argument.

[16]    See Wilkinsburg Sch. Dist. v. Koger, No. 422 C.D. 2017, 2019 WL 2997462, at *2 (Pa. Commw. Ct. July 10, 2019) ("the Original Record supports the conclusion that Koger [Sr.] is the Property owner, and nothing . . . counters that conclusion[.]"); Usoroh v. Koger, No. 22-013385, 2023 WL 12083252, at *1 (Pa.Com.Pl. Oct. 27, 2023) (observing that "[t]he ejectment action relates to property . . . the legal status of which was settled well before the case on appeal.").

[17]    *Order of Court*, Case No. 07-25165-BM, Dkt. No. 39 at ¶ 6.

[18]    *Sworn Declaration as Response to Usoroh's Motion the Dispute Here is Legal Rather than Factual there are no Material Facts in Dispute*, Dkt. No. 51 at ¶¶ 3, 6-7.

[19]    In re Koger, 630 B.R. at 9.

[20]    Id.

[21]    *Sworn Declaration as Response to Usoroh's Motion the Dispute Here is Legal Rather than Factual there are no Material Facts in Dispute*, Dkt. No. 51 at ¶¶ 3, 8-9.

[22]    Id. at ¶ 38.

5

Todd Sr. applied for relief from the Pennsylvania Homeowner Assistance Fund ("PAHAF") in 2022, but was deemed ineligible because he did not hold legal or equitable title to the Property.[23] Although it is unclear what initially prompted that conclusion, the Commonwealth Court affirmed because "[Todd Sr.] acknowledged that Todd Elliott Koger, Jr., was the sole owner"[24] and therefore "admi[tted] he was not eligible for the PAHAF program."[25]   So rather than determining the Property's ownership, the Commonwealth Court merely found that Todd Sr.'s application was properly denied because he disavowed a requisite ownership interest.[26]   It also expressly noted that Todd Sr.'s tax dispute was "not currently on appeal before this Court,"[27] further undermining his interpretation of the decision.

Eventually, the Kogers' losses cleared a path for a sheriff's sale of the Property to Isaac Usoroh[28] in August 2022.[29]   Ejectment actions followed, and Usoroh was awarded possession of the Property to the exclusion of Todd Sr., Elliott, and any other occupants.[30]   Todd Sr. appealed, but Elliott did not.   Ultimately, the Pennsylvania Superior Court upheld the

---

[23]   *Exhibit Letters*, Dkt. No. 51 at 19-20.

[24]   Koger v. Pennsylvania Hous. Fin. Agency, 302 A.3d 1272, 2023 WL 4752197, at *1 (Pa. Commw. Ct. 2023).

[25]   Id. at *2.

[26]   Id. ("Based upon the determination, the record, and the applicable policy, the appeal committee did not violate Koger's constitutional rights, commit an error of law, or fail to support its findings of fact with substantial evidence.").   According to an email the Kogers attached to a pleading, Todd Sr. told the Pennsylvania Housing Finance Agency that he only filed an application in his name because "Judge Ward says Todd [Sr.] is the owner."   *Reply to Respondent(s) Reponse Filed as a Section 502(a) Proof of Claim*, Adv. Pro. No. 24-2040-GLT, Dkt. 59 at ¶ 110.   He made it clear that "[w]e disagree with Judge Ward" and "acknowledge Todd [Jr.] as the 'only' owner with legal and equitable title," and included information to that effect in his PAHAF application.   Id.

[27]   Koger v. Pennsylvania Hous. Fin. Agency, 2023 WL 4752197, at *1 at n.5.

[28]   Since clarity requires the Kogers to be identified by their first names, the Court will refer to Isaac Usoroh as "Usoroh" rather than "Mr. Usoroh" to avoid any perception of unfairness.   No disrespect is intended.

[29]   *Exhibit A*, Case No. 24-21081-GLT, Dkt. No. 33-1.

[30]   See *Exhibit B*, Case No. 24-21081-GLT, Dkt. No. 33-2; Usoroh v. Koger, 2023 WL 12083252, at *4-6. Usoroh's claim for ejectment against Todd Jr. was dismissed when it was determined he no longer resided at the Property.

propriety of the sale and ejectment on appeal, soundly rejecting any assertion that the Todd Jr.

owned the Property:

> Father's contention that [Todd Jr.] owned the property is wrong . . .
> It is absurd to think, as Father's theory necessarily insists, that the
> HUD Secretary deeded the property to a four-year-old boy.  Any
> latent ambiguity in the deed, based on the drafter's failure to
> include the word "Sr." after "Todd Elliot Koger," is nothing more
> than an oversight in the drafting of the deed . . . the only logical
> conclusion is that the missing "Sr." on the grantee line of the
> HUD-to-Koger deed is a scrivener's error.
>
> *       *       *
>
> Therefore, Father owned the property when the School District
> filed its lawsuit against him at GD-05-018165, and the trial court
> had before it the appropriate defendant – i.e., Father. *Son was not
> an indispensable party to that action*, as Father has speciously
> claimed for over a decade.  Hence, we agree with the
> Commonwealth Court that the trial court had subject-matter
> jurisdiction in GD-05-018165. The judgment entered at GD-05-
> 018165 is valid, binding, and final.[31]

A.    Elliott's Bankruptcy – Case No. 24-21081-GLT

Elliott filed a *pro se* chapter 7 petition (his first) on May 3, 2024 in an effort to

halt the eviction, presumably because the judgment for possession was not stayed pending

appeal.  On *Schedule A/B*, he listed a fee simple interest in the Property and checked the box

indicating at least one other person held an interest in the Property.[32]  No other property interests

or assets were scheduled.  Beyond Usoroh and the municipal taxing authorities,[33] Elliott

scheduled only four utility creditors for which Todd Sr. and Todd Jr. were co-debtors.[34]  Later

---

[31]    Usoroh v. Koger, 332 A.3d 1246, 2024 WL 5166362, at *4-5 (Pa. Super. Ct. 2024), reargument denied
(Feb. 14, 2025) (emphasis added).

[32]    *Schedule A/B: Property*, Case No. 24-21081-GLT, Dkt. No. 1 at 12.

[33]    *Schedule D: Creditors Who Have Claims Secured by Property*, Case No. 24-21081-GLT, Dkt. No. 1 at 24-
25.

[34]    *Schedule E/F: Creditors Who Have Unsecured Claims*, Case No. 24-21081-GLT, Dkt. No. 1 at 27-30;
*Schedule H: Your Codebtors*, Case No. 24-21081-GLT, Dkt. No. 1 at 35.

proceedings revealed that at least one of the utility accounts was solely in Todd Sr.'s name,[35] raising questions about Elliott's alleged liability on the others.

Usoroh moved for stay relief to continue the process of gaining possession,[36] which Elliott (and Todd Sr.)[37] opposed.[38]  Rather than demonstrate that Elliott held a protectable Property interest, they fell back on the repeatedly rejected notion that the adverse judgments were invalid under a variation of *Rooker-Feldman*.[39]  As the Court understood it, the Kogers argued the sheriff's sale and ejectments were void because the state courts failed to follow the Commonwealth Court's precedent from the PAHAF appeal.[40]  Concluding their request amounted to a prohibited review of state court rulings for consistency, the Court granted Usoroh's motion finding Elliott failed to show any legal or equitable interest in the Property.[41] The Kogers appealed, but the order was affirmed by the United States District Court for the Western District of Pennsylvania and no further appeal was taken.[42]

---

[35]    See *Order*, Case No. 24-21081-GLT, Dkt. No. 133 at 5 ("the Kogers readily admit that [Duquesne Light Company] does not have a claim against Elliott.").

[36]    See *Motion for Determination of No Automatic Stay, or in the Alternative, Motion for Relief from the Automatic Stay, Pursuant to 11 U.S.C. § 362(d)*, Case No. 24-21081-GLT, Dkt. No. 33.

[37]    Throughout these proceedings, Todd Sr. has co-signed Elliott's pleadings and has attempted to act as his attorney-in-fact despite not being a licensed attorney nor having a valid power of attorney.  See, e.g., *Response to Motion*, Case No. 24-21081-GLT, Dkt. No. 41 at 7; *Transcript of July 25, 2024 Hearing*, Case No. 24-21081-GLT, Dkt. No. 116.  Todd Sr.'s unauthorized practice of law was also an issue during the state court proceedings.  See *Exhibit D*, Case No. 24-21081-GLT, Dkt. No. 44-4.  In fact, the court appointed a guardian ad litem for Elliott during the ejectment action.  See id. at 11:8-12:5.  The issue is now somewhat blurred by Todd Sr.'s requests to reopen his 2020 case and either join in or separately assert identical relief as Elliott.

[38]    See *Response to Motion*, Case No. 24-21081-GLT, Dkt. No. 41.

[39]    See Usoroh v. Koger (In re Koger), No. 24-21081-GLT, 2024 WL 4177876, at *2 (Bankr. W.D. Pa. Sept. 9, 2024), aff'd sub nom. Koger v. Usoroh, No. 2:24-CV-1287, 2025 WL 1780568 (W.D. Pa. Apr. 14, 2025).

[40]    Id. at 5.

[41]    Id.

[42]    Koger v. Usoroh, 2025 WL 1780568, at *2 ("The Court concurs with the Bankruptcy Court that Koger's version of how the *Rooker-Feldman* doctrine operates is incorrect.").

Before the Court heard Usoroh's motion for stay relief, he filed a motion to dismiss Elliott's bankruptcy for bad faith asserting it was filed simply to delay his efforts.[43] Although the Kogers filed a written objection,[44] they failed to appear for the scheduled hearing. While the Court was preparing a written dismissal order, the Kogers filed a motion for reconsideration.[45]

Elliott filed several more pleadings seeking affirmative relief[46] and, with "the Koger Family," initiated an adversary proceeding against Usoroh, PAHAF, Allegheny County, the Wilkinsburg School District, the Borough of Wilkinsburg, two former Wilkinsburg councilmen, and Duquesne Light Company.[47] The nine causes of action, which range from alleging a fraudulent transfer to a civil rights conspiracy, seek the same relief as all other filings: a judgment voiding the sheriff's sale.[48] The complaint basically rehashes rejected arguments to frame the Kogers' state court losses as a conspiracy to deprive them of the Property without due process of law. Several defendants have sought dismissal,[49] while the Kogers requested entry of

---

[43]   *Motion, Pursuant to 11 U.S.C. § 707, to Dismiss Chapter 7 Case*, Case No. 24-21081-GLT, Dkt. No. 44.

[44]   *Sworn Declaration as Response to Usoroh's Motion the Dispute Here is Legal Rather than Factual there are no Material Facts in Dispute*, Dkt. No. 51.

[45]   See *Motion for Reconsideration of August 15, 2024 Order (sic) Record Has Confused the Pro Se Litigants of the Scheduling (sic)*, Case No. 24-21081-GLT, Dkt. No. 75.

[46]   See *Memorandum Request to Vacate GD-05-18165 Judgment and Rule 12(f) Motion to Strike All Isaac Usoroh's Filings as "Personal Attacks" Filed in Support Elliott-Todd Parker Koger's Response*, Case No. 24-21081-GLT, Dkt. No. 46; *Section 522(h) of the Bankruptcy Code Motion*, Case No. 24-21081-GLT, Dkt. No. 68; *PAHAF 69522 Bankruptcy Form*, Case No. 24-21081-GLT, Dkt. 86; *Motion for Reconsideration of September 9, 2024 Order (sic) Bankruptcy Court Mistakenly Cites PAHAF 19868 as State Issue*, Case No. 24-21081-GLT, Dkt No. 87; *Motion for Sanctions (Violation of the 11 U.S.C. § 362 Stay) Request for Injunctive Relief and Damages*, Case No. 24-21081-GLT, Dkt. No. 125.

[47]   See *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. No. 24-02040-GLT, Dkt. No. 4.

[48]   Id.  The claims include: (1) "Enforcement 11 U.S.C. § 362(a)(1) Stay [sic] Case 2:21-00579"; (2) "*Rooker-Feldman* Doctrine"; (3) "Liberty Interest in Due Process"; (4) "Section 548 Fraudulent Transfer"; (5) "18 U.S.C. § 1964(c)"; (6) "No. 733052 July 7, 2023 Fair Housing Right to Sue"; and (7) "42 U.S.C. § 1981, 1983, and 1985 claims."

[49]   See *Motion to Dismiss Amended Adversary Complaint Pursuant to F.R.C.P. 12(b)(6) and 12(b)(1)*, Adv. No. 24-2040-GLT, Dkt. No. 17 (filed by Duquesne Light Company); *Motion to Join Motion to Dismiss*

defaults and summary judgment.[50]  All outstanding matters were scheduled for a single omnibus

hearing.

For her part, the chapter 7 trustee filed a report of no distribution, concluding that

the bankruptcy estate lacks any unexempt assets to administer for the benefit of creditors.[51]

B.    Todd Sr.'s Motion to Reopen – Case No. 20-23340-GLT

Around the same time Elliott inundated the Court with his complaint and similar

requests for relief, Todd Sr. moved to reopen his 2020 chapter 7 case.[52]  The motion to reopen

was substantially similar to a motion Elliott filed seeking to nullify the sheriff's sale under

section 522(h) of the Bankruptcy Code.[53]  Thereafter, Todd Sr. filed other pleadings that largely

overlapped with Elliott's and the adversary proceeding.[54]  He also challenged the

disinterestedness of a panel trustee who rejected an appointment in his case.[55]  A few words

about the 2020 case are necessary to place these requests in context.

---

*Amended Adversary Complaint at ECF Doc. 17*, Adv. No. 24-2040-GLT, Dkt. No. 58 (filed by Borough of Wilkinsburg, Marc Taiani, and Michael Lefebvre).

[50]    See *Motion for Default Judgment*, Adv. No. 24-2040-GLT, Dkt. No. 20; *Plaintiffs Amended Motion for Summary Relief*, Adv. No. 24-2040-GLT, Dkt. No. 43.  The Court denied the Motion for Default Judgment as to defendants Duquesne Light Company, Usoroh, the Borough of Wilkinsburg, Marc Taiani, and Michael Lefebvre.  See *Order Denying in Part Plaintiffs' Motion for Default Judgment*, Adv. No. 24-2040-GLT, Dkt. No. 37.

[51]    See *Chapter 7 Trustee's Report of No Distribution*, Case No. 24-21081-GLT, dated August 21, 2024.

[52]    See *Section 522(h) of the Bankruptcy Code Motion to Reopen*, Case No. 20-23340-GLT, Dkt. No. 125.

[53]    Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23, 11 U.S.C. § 101, *et seq*. All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[54]    See *Request for Reinstatement of 11 U.S.C. § 362 Stay; Joinder 24-2040-GLT and Stay of 24-21081-GLT; and Request for Order to Nullify Sheriff's Sale*, Case No. 20-23340-GLT, Dkt. No. 137; *11 U.S.C. § 324 Motion Invoking the Catch-all Misconduct Provision of 11 U.S.C. § 101(11)(14)(E) (sic); Request for Reinstatement of 11 U.S.C. § 362 Stay; Joinder of 24-2040-GLT and Stay of 24-21081-GLT; and Request for Order to Nullify Sheriff's Sale*, Case No. 20-23340-GLT, Dkt. No. 147; *Motion to Consolidate the Reopened Bankruptcy Case No. 20-23340-GLT into Adversary Proceeding No. 24-2040-GLT*, Case No. 20-23340-GLT, Dkt. No. 186.

[55]    See *11 U.S.C. § 324 Motion Invoking the Catch-all Misconduct Provision of 11 U.S.C. § 101(11)(14)(E) (sic); Request for Reinstatement of 11 U.S.C. § 362 Stay; Joinder of 24-2040-GLT and Stay of 24-21081-GLT; and Request for Order to Nullify Sheriff's Sale*, Case No. 20-23340-GLT, Dkt. No. 147.  Rosemary

Todd Sr. filed a voluntary petition for chapter 7 relief on November 27, 2020, and received a discharge on March 10, 2021.[56]  After the chapter 7 trustee found no assets to administer and the case was on the verge of closing, Todd Sr. filed a series of motions seeking to "redeem" the property or, alternatively, effectuate a "reaffirmation."[57]  Judge Agresti denied Todd Sr.'s requests, concluding that: (1) "[t]he Bankruptcy Code does recognize a right of redemption that may be exercised by a Chapter 7 debtor" but only with respect to "tangible personal property;"[58] (2) "[i]t is far from clear that reaffirmation would even be applicable or effective . . . to forestall a sheriff sale . . . based on a lien . . . and not on the Debtor's personal liability for the underlying debt;"[59] and (3) assuming it was, Todd Sr. still could not unilaterally reaffirm without the creditor's agreement.[60]  He also found that no bankruptcy court ever held that Todd Jr. owned the Property, and that Todd Sr.'s alleged status as his heir did not grant a security interest.[61]  Ultimately, Judge Agresti granted stay relief to both Todd Sr. and the Wilkinsburg School District "for the purpose of taking any action under or related to the pending state court action concerning the Property."[62]  Todd Sr. unsuccessfully appealed to the District Court,[63] but no further appeal was taken.  The chapter 7 case was closed on September 6, 2023.

---

C. Crawford was initially selected by the United State Trustee to serve as the chapter 7 trustee in Todd Sr.'s case, but she promptly rejected the appointment citing a conflict.  See Case No. 20-23340-GLT, Dkt. No. 24.  It is unclear what "misconduct" Todd Sr. believes Ms. Crawford committed, but it appears he is making hay over her acceptance of an appointment in Elliott's case four years later.  Regardless, since Todd Sr. failed to articulate any specific reason to question Ms. Crawford's disinterestedness, the motion will be denied.

[56]   See Case No. 20-23340-GLT, Dkt. Nos. 1, 35.

[57]   In re Koger, 630 B.R. at 3.

[58]   Id. at 7-8.

[59]   Id. at 8.

[60]   Id. at 8-9.

[61]   Id. at 8-10.

[62]   Id. at 10-11.

[63]   See *Memorandum Opinion and Order of Court*, Case No. 20-23340-GLT, Dkt. No. 114.

The Court heard all of Todd Sr.'s motions at the same omnibus hearing scheduled to address Elliott's motions and the adversary proceeding. Both Todd Sr. and Elliott appeared and expounded on their positions at length.[64] At its conclusion, the Court took all matters under advisement.

## II.    JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. The dismissal and reopening of bankruptcy cases are core proceedings under 28 U.S.C. § 157(b)(2)(A).[65] A proceeding to avoid a fraudulent transfer is also (at least theoretically) core under 28 U.S.C. § 157(b)(2)(H). As will be explained more thoroughly below, the bulk of the Kogers' affirmative claims are non-core proceedings that are not "related to" a case arising under title 11 of the United States Code.[66] Notably, the Kogers do not consent to this Court entering final orders pursuant to 28 U.S.C. § 157(c)(2).[67]

---

[64]    During the hearing, Todd Sr. suggested that a conflict of interest existed because the chapter 7 trustee in Todd Jr.'s case, Robert Shearer, is related to an attorney representing Allegheny County in the sheriff's sale. See *Transcript of September 24, 2024 Hearing*, Dkt. No. 79 9:6-10:8. The Court notes that Todd Jr.'s case was closed on August 11, 2016 and nothing had been previously raised in that proceeding or elsewhere to challenge Mr. Shearer's capacity to serve as trustee. See Case No. 16-21143. Beyond that, Todd Sr.'s arguments on this point were difficult to follow and he failed to establish any grounds for relief by this Court. Moreover, to the extent a conflict existed in the execution proceedings, that was an issue for the state court to decide.

[65]    A core proceeding is one that is either listed in 28 U.S.C. § 157(b), invokes a substantive right provided by the Code, or could only rise in the context of a bankruptcy case. In re Guild & Gallery Plus, Inc., 72 F.3d 1171, 1178 (3d Cir. 1996).

[66]    See 28 U.S.C. § 157(c)(1). "[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect *on the estate being administered in bankruptcy*. Halper v. Halper, 164 F.3d 830, 837 (3d Cir. 1999) (quoting Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)) (internal quotation marks omitted, emphasis added).

[67]    *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4 at ¶ 200.

### III.    POSITION OF THE KOGERS

Having thoroughly reviewed the 4-inch-tall stack of filings, the Court echoes Judge Agresti's observations about Todd Sr.'s pleadings four years ago:

> These various motions . . . are confusing, redundant, and include multiple requests for relief within a single document. They have also evolved over time as the Debtor made various filings which seemed to change the exact nature of the relief he was seeking.[68]

As the Pennsylvania Superior Court put it, the Kogers pleadings largely consist of a "rambling list of grievances from the tax-lien case."[69]  Many include extensive statements of undisputed fact that are clearly neither undisputed nor even facts.  These "facts" are typically a series of disjointed, conclusory statements.  While the Kogers reference a variety of legal doctrines and cases, those authorities are either inapplicable, misapplied to the facts at hand, or completely made up.[70]  And as outlined above, they have a habit of selectively quoting decisions and misrepresenting prior court proceedings to obscure what actually happened.[71]  Even as *pro se* parties, the Kogers have likely crossed the boundaries of permissible conduct under Bankruptcy Rule 9011.

Although the Koger filings are varied, they are really asking for just one thing: avoidance of the sheriff's sale.  The prevailing theme is that past errors mandate a fresh

---

[68]    In re Koger, 630 B.R. at 3.

[69]    Usoroh v. Koger, 2024 WL 5166362, at *5.

[70]    If the Court had to speculate, it seems the Kogers used artificial intelligence to draft their pleadings because some of their citations relate to cases that do not exist.  See, e.g., *Addendum Correction of Legal Authorities*, Case No. 20-23340-GLT, Dkt. No. 175 at ¶ 8 (citing "In re: Foreclosure of 123 Main St., No. 22-1456 (3d Cir. 2023)" for the proposition that the Third Circuit ruled that "material facts and ownership of the property, as previously adjudicated by the state agency and affirmed by the Commonwealth Court, could not be subsequently challenged in an appeal before the Superior Court or Court of Common Pleas.").

[71]    See, e.g., *Sworn Declaration as Response to Usoroh's Motion the Dispute Here is Legal Rather than Factual there are no Material Facts in Dispute*, Dkt. No. 51 at ¶ 3 ("this Bankruptcy Court has determined at least "three times" (No. 10-27397-BM, No. 07-25165-BM, and No. 20-23340-TPA), that the [state] trial court lacked fundamental jurisdiction: Todd Elliott Koger, Sr., the lone defendant at GD-05-18165, does not own the property.").

examination of the entire process.   Deciphering the Kogers' arguments is challenging, but four justifications emerge from the claims in which they are cloaked.   First, the Kogers maintain the state court proceedings are invalid because Todd Jr., the alleged owner of the Property, was not a party and was denied due process.   Second, if Todd Jr. is not the owner, then they contend Todd Sr.'s exercise of "redemption rights"—namely, his application for financial assistance from PAHAF—must be recognized by this Court.   Third, they assert that the sheriff's sale of their home was a fraudulent transfer because the Property was worth over a $100,000 but was sold for only $51,000.   Lastly, the Kogers argue that Todd Sr. was the target of a criminal conspiracy to deprive him and his family of their home due to his racial identity and his failed political campaigns.

## IV.   DISCUSSION

The Court recognizes the Kogers' desperation as it appears likely that they will lose their family home, assuming they have not already.   Given that reality, the Court has afforded them all process and consideration that is due and befits the gravity of their situation. But even with a substantial degree of leniency as *pro se* parties,[72] the Kogers' positions are lacking in good faith.   As the Court previously observed in a similar high-stakes epic:

> In our legal system, disappointed litigants have the right to exhaust every legitimate remedy available before resigning themselves to the finality of an adverse judgment. But they may not continually rehash rejected arguments, engage in forum shopping, and launch repeated collateral attacks in a futile attempt to forestall the inevitability of a final judgment.

* * *

---

[72]   See Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244 (3d Cir. 2013) (recognizing a "tradition of leniency" descending from the Supreme Court's instruction "to hold pro se complaints 'to less stringent standards than formal pleadings drafted by lawyers.'") (quoting Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

14

> It is fundamental . . . that all litigation must end in due course and
> reach a resolution that cannot be disturbed.[73]

Despite Todd Sr.'s positive spin on various decisions, the Kogers have repeatedly lost in the state courts and that is precisely why they are here: to try again before a new court. Yet "what's done, is done,"[74] and the Kogers cannot escape binding adjudications by simply changing the forum.

Candidly, the relief the Kogers seek is a nonstarter. And they should know that because they have compelled court after court, including this one, to endlessly address the same rehashed arguments. The Kogers' grievance that their arguments and evidence have never been heard nor sufficiently considered is disingenuous and belied by the voluminous record of proceedings. In fact, considering their propensity for selective quoting and gross mischaracterization, it is fair to say that it is the Kogers who do not listen. Unfortunately, lingering doubts will do nothing to bring these matters to a close, so the Court will address each issue raised by the Kogers if only to make matters easier for the next court.

A.    <u>There is No Such Thing as a "Familial" Claim or Interest in Property</u>

Before going any further, the Court must address an overarching problem with the Kogers' claims: *standing*.

"In essence[,] the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."[75] "Much more than legal niceties,"[76] the absence of standing deprives a court of the subject matter jurisdiction necessary to decide the case.[77] Standing "subsumes a blend of constitutional requirements and prudential

---

[73]   <u>Butko v. Ciccozzi (In re Butko)</u>, 624 B.R. 338, 343, 365 (Bankr. W.D. Pa. 2021).

[74]   WILLIAM SHAKESPEARE, *MACBETH*, Act III, Scene 2.

[75]   <u>Warth v. Seldin</u>, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205, 45 L. Ed. 2d 343 (1975).

[76]   <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 101, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998).

[77]   <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293, 296 (3d Cir. 2003).

considerations."[78]   The United States Court of Appeals for the Third Circuit summarized the
constitutional elements of standing as follows:

> (1) the plaintiff must have suffered an injury in fact—an invasion
> of a legally protected interest which is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or
> hypothetical;
>
> (2) there must be a causal connection between the injury and the
> conduct complained of—the injury has to be fairly traceable to the
> challenged action of the defendant and not the result of the
> independent action of some third party not before the court; and
>
> (3) it must be likely, as opposed to merely speculative, that the
> injury will be redressed by a favorable decision.[79]

In terms of prudential standing, "the plaintiff generally must assert his own legal rights and
interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[80]
There is a limited exception for litigants with a close relation to a third party and have
themselves suffered an injury in fact, but there must be "some hindrance to the third party's
ability to protect his own interests."[81]

It is no secret that Todd Sr. is driving the litigation and using his family members
as proxies to keep it going.  He clearly initiated Elliott's case, drafted all the filings, and is
calling all the shots,[82] just as he undoubtedly did on behalf of a then 12-year-old Todd Jr.

---

[78]   Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S.
464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

[79]   Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 484–85 (3d Cir. 1998).

[80]   Warth v. Seldin, 422 U.S. at 499.

[81]   Storino v. Borough of Point Pleasant Beach, 322 F.3d at 299 (citing Powers v. Ohio, 499 U.S. 400, 410-
411, 111 S. Ct. 1364, 1370, 113 L. Ed. 2d 411 (1991)).

[82]   Beyond calling the Court an "idiot," see Transcript of September 24, 2025 Hearing, Case No. 24-21081-
GLT, Dkt. No. 79 at 40:4-5, Elliott has said little beyond parroting Todd Sr.'s talking points and has not
exhibited any substantive knowledge of his own papers.  Indeed, the state court appointed a guardian ad
litem on his behalf during the ejectment proceeding because "there seem[ed] to be a lack of appreciation
that [Elliott] may not have a living space within so much time."  See Exhibit D, Case No. 24-21081-GLT,
Dkt. No. 44-4 at 11:8-12:5.

Though he is neither an attorney nor holds a power of attorney, Todd Sr. engaged in the unauthorized practice of law by making legal arguments on his son's behalf. And rather than heeding admonitions that he lacks standing to do so, Todd Sr. has tried to conjure his own by filing an adversary proceeding and reopening his 2020 bankruptcy. It is apparent that these efforts are aimed at creating a beachhead in the bankruptcy court (or perhaps the federal courts generally) from which to attack the state court proceedings.

To that end, the Kogers gloss over notions of individualized rights and injuries by advancing a familial claim or interest in the Property held by the "Koger family."[83] Despite purporting to file a proof of claim on behalf of the Koger family,[84] the Kogers have never articulated the basis or scope of any such interest. As best as the Court can discern, the "interest" appears to be simply their understandably visceral attachment to their home and desire to avoid the "injurious" effect of its loss.[85] As a result, the Kogers seem to believe that anyone who lives there may assert any claim or affirmative right to protect the home.

Needless to say, there is no legally recognized family claim or interest in Property. Moreover, the law categorizes recognized property interests by type—such as legal, equitable, possessory, and contingent—and affords them different levels of consideration. The point being that those without a legal title interest have far fewer rights to property to assert in court.[86] An "injury" in the general sense simply does not imply an "invasion of a legally

---

[83] Although the Koger family is purportedly a plaintiff in the adversary proceeding, the complaint does not define its membership.

[84] See *Reply to the Respondent(s) Response as a Section 502(a) Proof of Claim*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 59 at 1.

[85] See, e.g., *Sworn Declaration as Response to Usoroh's Motion the Dispute Here is Legal Rather than Factual there are no Material Facts in Dispute*, Dkt. No. 51 at ¶ 17.

[86] There is an irony in that Todd Sr. disavows a title interest but then tries to assert the rights of everyone else to defend it.

protected interest" required for standing.[87]  And one cannot commandeer the rights of a family member in the name of saving the family home simply because it is convenient.

In sum, the "Koger Family" cannot maintain any causes of action based on such vaguely described rights.[88]  Nor may Todd Sr. or Elliott bolster their standing by pressing the rights of others such as Todd Jr.  Ultimately, the Kogers' claims must rise or fall based on what they themselves have standing to assert in the context of their own bankruptcy cases.

B.    The State Court Judgments are Final and Binding on the Court

There is no dispute that the validity of the sheriff's sale and subsequent ejectments have been affirmed by a final order of the Pennsylvania Superior Court.[89]  While the Kogers argue that this Court has "authority to decide . . . how their decision applies to bankruptcy cases,"[90] that is incorrect.

The *Rooker-Feldman* doctrine has been a recurring theme of this case, particularly because the Kogers have advanced "novel" formulations.[91]  This doctrine bars an inferior federal court from "from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'"[92]  The Third Circuit recently emphasized *Rooker-Feldman*'s narrow application: "an action that is, or is in effect, an appeal of a state-court judgment may not be lodged in any federal court but the

---

[87]    Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d at 484.

[88]    Accordingly, the Koger family is not a plausible plaintiff and will not be considered further.

[89]    See Usoroh v. Koger, 2024 WL 5166362, at *5.

[90]    *Transcript of September 24, 2025 Hearing*, Case No. 24-21081-GLT, Dkt. No. 79 at 18:6-10.

[91]    "The *Rooker-Feldman* doctrine takes its name from two Supreme Court cases policing the boundary between the original jurisdiction of the district courts and the appellate jurisdiction of the Supreme Court." In re Adams, No. 24-1212, 2025 WL 2525854, at *3 (3d Cir. Sept. 3, 2025).  See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L.Ed. 2d 206 (1983).

[92]    Lance v. Dennis, 546 U.S. 459, 460, 126 S. Ct. 1198, 1199, 163 L.Ed. 2d 1059 (2006) (quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

Supreme Court."[93]   Indeed, it does not "stop a district court [or bankruptcy court] from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court."[94]

> That said, the *Rooker-Feldman* doctrine is only half the story:

> [T]he kind of case that triggers *Rooker-Feldman* necessarily involves a plaintiff who wants another go at it. Unhappy with her state-court results, she comes to the federal district court to try again. But imagine a legal system in which that were a winning strategy: If you whiff in state court, take your mulligan and come to federal court for another swing. State-court judgments would be near-worthless. To ensure those judgments receive the full faith and credit promised by the Constitution, art. IV, § 1, and to safeguard the efficiency and finality of litigation, we apply principles of preclusion.[95]

There are two forms of preclusion: claim and issue.[96]   Claim preclusion, also known as res judicata, bars successive litigation of a claim resolved by a final judgment.[97]   Issue preclusion, also known as collateral estoppel, bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."[98]   The preclusive effect of a state court judgment is determined by the law of the state that entered it.[99]

> Admittedly, bankruptcy courts are under certain circumstances "empowered to avoid state court judgments, to modify them, and to discharge them."[100]   As explained by the

---

[93]   In re Adams, 2025 WL 2525854, at *4.

[94]   Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. at 293.

[95]   In re Adams, 2025 WL 2525854, at *4.

[96]   Id.

[97]   New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

[98]   Taylor v. Sturgell, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) (quoting New Hampshire v. Maine, 532 U.S. at 748-49).

[99]   See 28 U.S.C. § 1738.

[100]   In re Adams, 2025 WL 2525854, at *6 (citations omitted).

Third Circuit, *Rooker-Feldman* is not offended when a bankruptcy court acts pursuant to a statutory bankruptcy power under the grant of bankruptcy jurisdiction.[101]   Nevertheless, a bankruptcy court can only exercise those powers subject to claim and issue preclusion.

The takeaway is that the Kogers have not wiped the slate clean by moving the fight to the bankruptcy court.  The state court judgments arising from the collection, execution, and ejectment actions are res judicata.[102]  Similarly, issues and defenses raised by the Kogers that were necessarily decided by those rulings cannot be relitigated here in the context of a new claim.[103]  How these principles specifically impact the Kogers' theories will be discussed in the following sections.

C.      Todd Sr., Not His Sons, Owned the Property Prior to the Sheriff's Sale

To cut right to it, the "Todd-Elliott Koger" on the 1999 deed is Todd Sr.  Any argument to the contrary is barred by the preclusive effect of the Pennsylvania Superior Court's decision.[104]  Full stop.

Since theories premised on Todd Jr.'s title to the Property are off the table, it is abundantly clear that Elliott could not have received an ownership interest from him.  That said, the Court notes that Elliott's claim as represented was never legally sustainable.  No one disputed that he never received a deed.[105]  At best, the Kogers stated that Todd Jr. "moved him there . . .

---

[101]    Id. (citing 28 U.S.C. § 1334).

[102]    See Callery v. Municipal Authority of Blythe Twp., 432 Pa. 307, 243 A.2d 385 (1968) (res judicata requires the following conditions to be met: "(1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and, (4) identity of the quality or capacity of the parties suing or sued.").

[103]    See Balent v. City of Wilkes–Barre, 542 Pa. 555, 564, 669 A.2d 309, 313 (1995) (for collateral estoppel to apply, "[t]he identical issue must have been necessary to final judgment on the merits, and the party against whom the plea is asserted must have been a party, or in privity with a party, to the prior action and must have had a full and fair opportunity to litigate the issue in question.").

[104]    Usoroh v. Koger, 2024 WL 5166362, at *5.

[105]    Transcript of September 24, 2025 Hearing, Case No. 24-21081-GLT, Dkt. No. 79 at 12:11-24.

to be the owner" as evidenced by statements in a state court transcript.[106]    But under

Pennsylvania law, oral agreements to convey real property violate the statute of frauds and are

unenforceable.[107]    So even if Todd Jr. had been the owner (he was not), the Court could not have

found that Elliott had a protectable legal interest in the Property on this record.[108]    That is why

the Court already granted Usoroh stay relief.[109]

       D.      <u>Neither Elliott nor Todd Sr. can Avoid the Sheriff's Sale as a Fraudulent Transfer</u>

           The Kogers each filed a motion invoking section 522(h) to avoid the sheriff's sale

of the Property as a fraudulent transfer under section 548.[110]    Together, they also assert a cause

of action under section 548 in the adversary proceeding.[111]    For the reasons stated below, these

requests must be denied.

           As a general matter, chapter 7 debtors do not possess standing to pursue a

trustee's avoidance actions.    Indeed, the plain terms of the statute provide that only the "trustee"

is empowered to bring a fraudulent transfer claim under section 548.[112]    A debtor's ability to

initiate such actions arises only in limited circumstances.    One exception is section 522(h), which

---

[106]    <u>Id.</u> at 30:23-31:1, 77:19-78:14.

[107]    <u>See</u> <u>Fannin v. Cratty</u>, 480 A.2d 1056, 1058 (Pa. Super. 1984); 33 Pa. Stat. Ann. § 1 (transfer of an interest in real property should be in writing).

[108]    Although not articulated in any pleading, Todd Sr. also argued during the hearing that Elliott has rights to the Property as an "heir" under Pennsylvania law.    <u>See</u> *Transcript of September 24, 2025 Hearing*, Case No. 24-21081-GLT, Dkt. No. 79 at 17:6-10.    As mentioned above, Todd Sr. previously argued in his 2020 case that he had rights to the Property as Todd Jr.'s heir.    <u>See</u> <u>In re Koger</u>, 630 B.R. at 8.    Judge Agresti rejected that argument, concluding that "the law is clear that during the lifetime of a property owner a presumptive heir of that owner has no interest in the owner's property." <u>Id.</u>    The Court agrees and finds this would apply to Elliott with equal force.

[109]    <u>See</u> In re Koger, 2024 WL 4177876, at *5.

[110]    <u>See</u> *Section 522(h) of the Bankruptcy Code Motion to Reopen*, Case No. 20-23340-GLT, Dkt. No. 125; *Section 522(h) of the Bankruptcy Code Motion*, Case No. 24-21081-GLT, Dkt. No. 68.

[111]    *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Case No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 153-159 (Count Five).

[112]    11 U.S.C. § 548(a).

allows a debtor to pursue an avoidable transfer under section 548 if a trustee refuses and the recovered property can be claimed as exempt by the debtor.[113]

To state what should be obvious, Elliott cannot utilize sections 522(h) and 548(a) to avoid a transfer of the Property because he never had an ownership interest in the first place. Section 548(a) does not permit the avoidance of just any transfer, but a "transfer . . . of an interest *of the debtor* in property."[114]   Similarly, Elliott cannot exempt something he does not own.[115]  Therefore, he lacks standing to bring an avoidance action.[116]

Although Todd Sr. did own the Property prior to the sheriff's sale, his attempt to avoid the transfer fares no better.  He filed his chapter 7 case in November 2020, the trustee filed a no-asset report in January 2021, and Todd Sr. received a discharge in March 2021.[117]  The sheriff's sale occurred nearly a year and a half later in August 2022.  By its own terms, section 548(a) only applies to transfers "made or incurred on or within 2 years *before* the date of the

---

[113]     11 U.S.C. § 522(h) provides:

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> (1)  such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
>
> (2)  the trustee does not attempt to avoid such transfer.

[114]     11 U.S.C. § 548(a)(1) (emphasis added).

[115]     See In re James, 96 B.R. 590, 594 (Bankr. W.D. Ark. 2013) ("exemptions can only be claimed to the extent the debtor has an ownership interest in the property"); In re Zieg, 409 B.R. 917, 919 (Bankr. W.D. Mo. 2009) (a debtor cannot claim an exemption in property that he does not own).

[116]     See In re Ryker, 315 B.R. 664, 673 (Bankr. D.N.J. 2004) (debtor lacked standing under section 522(h) when he could not assert a valid homestead exemption in the subject property).

[117]     See Case No. 20-23340, Dkt. Nos. 1, 35, and the unnumbered docket entry preceding Dkt. No. 33.

filing of the petition."[118]   It simply does not apply to a post-petition, let alone post-discharge, transfer of assets.[119]

In the interest of leaving no stone unturned, section 549 allows a trustee to avoid an unauthorized post-petition transfer of property of the estate.[120]   While the sheriff's sale was clearly post-petition, it was also after the trustee fully administered the estate.   As a result, the Property was no longer property of the estate at the time of the transfer.   The transfer also was not "unauthorized" because Judge Agresti granted the Wilkinsburg School District stay relief to proceed against the Property.

In sum, the Kogers cannot use sections 522(h) and 548 to avoid the sheriff's sale.

E.     The Complaint Fails to State a Claim Upon Which Relief May be Granted

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.[121]   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[122]   Legal conclusions couched as fact and threadbare recitals supported by conclusory statements must be disregarded.[123]   In assessing plausibility, the court may also consider "documents attached to the complaint and matters of public record, . . . and a court may

---

[118]     11 U.S.C. § 548(a)(1) (emphasis added). Todd Sr. is acutely aware of this limitation, having cited this provision in his motions.   See *Section 522(h) of the Bankruptcy Code Motion to Reopen*, Case No. 20-23340-GLT, Dkt. No. 125 at ¶ 5.   To the extent he invites the Court to depart from the statutory language as part of a request for "additional or alternative relief," it declines to do so.

[119]     See In re Nat'l Audit Def. Network, 367 B.R. 207, 218 (Bankr. D. Nev. 2007) ("Section 548 only covers transfers occurring before the petition date.").

[120]     11 U.S.C. § 549(a).

[121]     See Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings by Fed. R. Bankr. P. 7012(b).

[122]     Ashcroft v. Iqbal, 556 U.S. 556 U.S. 662, 678,129 S. Ct. 1937, 1940-41, 173 L. Ed. 2d 868 (2009) (quoting Bell Alantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[123]     Id.

take judicial notice of a prior judicial opinion."[124]   Ultimately, whether to grant a motion to

dismiss is a "context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."[125]

In addition to the fraudulent transfer action discussed above, the Kogers assert a

myriad of other causes of action aimed at overturning the sheriff's sale.   Though 40 pages in

length, the complaint fails to state any claim upon which relief can be granted.

### 1.   The Sheriff Sale Did Not Violate the Automatic Stay

In Count One, the Kogers contend the sheriff's sale was void *ab initio* because the

automatic stay was in effect at that time "in the case of 2:21-00579."[126]   Because no bankruptcy

case is assigned that number, the Court presumes they meant Case No. 2:21-cv-00759, which

was Todd Sr.'s appeal of Judge Agresti's decision denying his request for redemption or

reaffirmation.[127]   The problem with this theory is that Judge Agresti also granted stay relief to

both Todd Sr. and the school district "for the purpose of taking any action under or related to the

pending state court action concerning the Property."[128]   Therefore, the Wilkinsburg School

District was expressly authorized to advance the state court proceedings and initiate a sheriff's

sale of the Property.   In the absence of a stay pending appeal, which Todd Sr. did not seek, stay

relief became effective no later than June 11, 2021.[129]   As a result, the automatic stay was not in

---

[124]   McTernan v. City of York, Penn., 577 F.3d 521, 526 (3d Cir. 2009) (citation omitted); see Tanksley v. Daniels, 902 F.3d 165, 172 (3d Cir. 2018).

[125]   Ashcroft v. Iqbal, 556 U.S. at 679.

[126]   *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Case No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 122-124.

[127]   See *Memorandum Opinion and Order of Court*, Case No. 20-23340-GLT, Dkt. No. 114.

[128]   In re Koger, 630 B.R. at 10.

[129]   See Fed. R. Bankr. P. 4001(a)(3) (an order granting stay relief "is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise.").

effect in August 2022 and cannot serve as a basis to void the sheriff's sale.  Accordingly, Count

One must be dismissed.

2. *Rooker-Feldman* Does Not Permit the Court to Set Aside an "Inconsistent" State Court Decision

In Count Two, the Kogers reiterate the same flawed application of *Rooker-*

*Feldman* that the Court previously rejected, and the District Court affirmed.[130]  These rulings are

law of the case, meaning that the "decision . . . govern[s] the same issues in subsequent stages in

the same case."[131]  The Court need not go further, but offers one additional observation.

While the Court is sensitive to the Third Circuit's recent suggestion that courts

often say *Rooker-Feldman* when they mean preclusion,[132] *Rooker-Feldman* was the appropriate

doctrine based on the Kogers' argument.  Their assertion that the Pennsylvania Superior Court

and Commonwealth Court issued inconsistent decisions literally asks the Court to review a state

court ruling for error.  As such, what they requested was in effect an improper appeal.

3. The Kogers Cannot Vindicate Todd Jr.'s Alleged Denial of Due Process

Through Count Three, the Kogers revive their core assertion that Todd Jr. owned

the Property and was denied due process as an unnamed indispensable party to the execution

proceedings.[133]  Essentially, they are attempting to turn their unsuccessful defense to the

execution and ejectment actions into affirmative claim for relief from those judgments.  Putting

aside that neither Todd Sr. nor Elliott have standing to vindicate Todd Jr.'s rights, this strategy is

---

[130] In re Koger, 2024 WL 4177876, at *5 (Bankr. W.D. Pa. Sept. 9, 2024), aff'd sub nom. Koger v. Usoroh, 2025 WL 1780568, *2 ("The Court concurs with the Bankruptcy Court that Koger's version of how the *Rooker-Feldman* doctrine operates is incorrect).

[131] Arizona v. California, 460 U.S. 605, 618, 103 S. Ct. 1382, 1391, 75 L.Ed.2d 318 (1983), decision supplemented, 466 U.S. 144, 104 S. Ct. 1900, 80 L.Ed.2d 194 (1984); see Pepper v. United States, 562 U.S. 476, 506–07, 131 S. Ct. 1229, 196 (2011).

[132] In re Adams, 2025 WL 2525854, at *3-5.

[133] See *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 131-145.

obviously precluded by the Pennsylvania Superior Court's decision.  Todd Sr. raised this exact

argument and it was explicitly rejected:

> Father owned the property when the School District filed its
> lawsuit against him at GD-05-018165, and the trial court had
> before it the appropriate defendant – i.e., Father. *Son was not an
> indispensable party to that action*, as Father has speciously
> claimed for over a decade.[134]

There is no question this finding was critical to their appellate ruling else Todd Sr. would have

prevailed.  So, as the Third Circuit put it, he is not entitled "take [a] mulligan and come to federal

court for another swing."[135]  Count Three must be dismissed.

### 4. The Subsequent Appointment of a Guardian Ad Litem Is Irrelevant to the Previously Completed Sheriff's Sale

Count Four is a head-scratcher.  The Kogers contend that Elliott's constitutional

rights were violated when the state court appointed a guardian ad litem for him during the

ejectment proceeding.[136]  As they see it, the guardian impeded Elliott's ability to successfully

represent his and his family's interests.  Even assuming that were true, Elliott has failed to

explain how the events of December 2023 could undermine the validity of a sheriff's sale that

took place over a year earlier.  Without a sufficiently pled causal connection, Count Four is not

plausible on its face and must be dismissed.

### 5. The Court Lacks Jurisdiction Over Todd Sr.'s Post-Petition Claims

Counts Six, Seven, and Eight are affirmative causes of action under the Racketeer

Influenced and Corrupt Organizations Act,[137] the Fair Housing Act,[138] and the Civil Rights

---

[134]    Usoroh v. Koger, 2024 WL 5166362, at *5 (emphasis added).

[135]    In re Adams, 2025 WL 2525854, at *4.

[136]    See *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 147-152.

[137]    11 U.S.C. § 1964(c); see *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 153-174.

Act.[139]  Altogether, these counts allege that Todd Sr. was the target of a criminal conspiracy to deprive him of his home based on his racial identity and political activities.  Based on a review of the complaint, these claims appear to be asserted solely by Todd Sr., which is consistent with Elliott not listing them on his *Schedule A/B*.  Then again, neither did Todd Sr. in 2020.

While the allegations are difficult to parse, Todd Sr. focuses on two seemingly disparate events: (1) his "unjust" removal from the 2013 primary ballot for the Wilkinsburg mayoral election;[140] and (2) the "illicit" sale of the Property in August 2022.[141]  The Court is unsure of the throughline, but Todd Sr. appears to contend that the sale was somehow a "cover up" for his removal from the ballot.[142]

To the extent that Todd Sr. complains of conduct that occurred years after his chapter 7 petition (namely, the sheriff's sale), that appears to be a post-petition claim that was never property of his estate.  Such a claim would not be "related to" Todd Sr.'s 2020 case, depriving the Court of subject matter jurisdiction.  On the other hand, if the Court were to focus on his prepetition removal from the 2013 mayoral ballot, those allegations appear inadequately pled to establish a plausible claim for relief under the referenced statutes.[143]  The connection to the Property and the relief sought after also appears tenuous at best.

---

[138]   42 U.S.C. § 3601 *et seq.*; see *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 175-189.

[139]   42 U.S.C. §§ 1981, 1983, and 1985; see *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 190-199.

[140]   See *Amended Complaint for Declaratory Judgment, Injunctive Relief and Damages*, Adv. Pro. No. 24-2040-GLT, Dkt. No. 4 at ¶¶ 166, 178-179, 199.

[141]   Id. at ¶¶ 167, 193.

[142]   See *id.* at ¶ 189 ("Accordingly, Plaintiffs are entitled to a declaratory judgment that the RICO conspiracy that targeted the family was intentionally done because of race (African American) with the intention of unjustly removing Todd Elliott Koger, Sr. from the 2013 primary ballot for Wilkinsburg Mayor and thereafter cover such up as per the August 10, 2022 'fraudulent transfers' of the Koger family property.").

[143]   Even assuming Todd Sr. could amend his complaint to assert a plausible prepetition claim, that claim would be property of the estate and the chapter 7 trustee would become the only person with standing to pursue it.  See Cellco P'ship v. Bane (In re Bane), 426 B.R. 152, 159 (Bankr. W.D. Pa. 2010), order aff'd,

Accordingly, Counts Six, Seven, and Eight will be dismissed.

F.     The Court Lacks Jurisdiction Over Todd Sr.'s Redemption Claim

Finally, as a last-ditch effort, the Kogers contend that they have "invoke[ed] a legitimate entitlement to redemption" and want the Court to assess that under the American Rescue Plan of 2021 ("ARP").[144]   In effect, they are asking the Court to reverse the denial of Todd Sr.'s PAHAF application.   In essence, this is the corollary to their *Rooker-Feldman* argument since they believe that the Superior Court and Commonwealth Court decisions are inconsistent regarding the Property's ownership.[145]   The Kogers contend bankruptcy courts can exercise jurisdiction over ARP disbursements and cite two appellate decisions that supposedly confirm that.   They do not, and in fact are wholly unrelated to ARP or the bankruptcy court's jurisdiction with respect to it.[146]

Having reviewed the statute, the Court is convinced that no such jurisdiction exists.   Homeowner assistance funds are administered at the state level,[147] and in Pennsylvania, that function is performed by the Pennsylvania Housing Finance Agency ("PHFA").[148]   There is no authority for the proposition that bankruptcy courts have any role in the process, nor is there a

---

No. 02:10-CV-00655-TFM, 2010 WL 11693611 (W.D. Pa. Aug. 5, 2010); Mini-Miners, Inc. v. Lansberry (In re Lansberry), 177 B.R. 49, 55 (Bankr. W.D. Pa. 1995).

[144]   See *Reply to the Respondent(s) Response Filed as Section 502(a) Proof of Claim*, Adv. No. 24-2040, Dkt. No. 59 at ¶¶ 1-5.

[145]   As previously explained, the Commonwealth Court never said Todd Jr. owned the Property.   Instead, it held that his application was properly denied because he disavowed an interest in the Property which was a prerequisite to obtaining relief.   Basically, Todd Sr. clouded his own title to his detriment.

[146]   See Bravo v. Att'y Gen. United States, No. 23-1356, 2024 WL 243340 (3d Cir. Jan. 23, 2024) (dismissing an appeal of a decision by the Board of Immigration Appeals refusing to reopen immigration proceedings); In re Aleckna, 13 F.4th 337 (3d Cir. 2021) (upholding the finding of stay violation against a university that withheld a student's transcript due to unpaid tuition).

[147]   See 15 U.S.C. § 9058d.

[148]   See VonNieda-LaGrassa v. Nationstar Mortg. LLC, No. 5:23-CV-03407-JMG, 2024 WL 4761390, at *1 (E.D. Pa. Nov. 8, 2024).

basis to pursue a private right of action under the ARP.[149]  So once again, the Kogers request

what the *Rooker-Feldman* doctrine expressly forbids.  Accordingly, their request for this Court to

wade into their eligibility under the ARP or any "redemption rights" they claim will be denied.

G.    Dismissal of Elliott's Case with Prejudice is Warranted

Section 707(a) provides that the Court may dismiss a chapter 7 case "only for

cause."[150]  "Cause" is undefined by the Bankruptcy Code, but it can include an "unreasonable

delay by the debtor that is prejudicial to creditors."[151]  The moving party has the burden to

demonstrate "cause," the sufficiency of which is left to the sound discretion of the Bankruptcy

Court.[152]

The Code also permits a court to dismiss the chapter 7 case of an individual

whose debts are primarily consumer debts if granting chapter 7 relief would be an "abuse."[153]

The term "abuse" is also not defined, but section 707(b)(3) directs the court to consider "whether

the debtor filed the petition in bad faith"[154] or whether "the totality of the circumstances . . . of

the debtor's financial situation demonstrates abuse."[155]  Previously, this Court determined that

"abuse" under §707(b)(3)(B) can include "an improper use of the bankruptcy system to take

---

[149]    See Johnson v. HAF, No. 6:24-CV-01141-AA, 2024 WL 4057520, at *4 (D. Or. Sept. 5, 2024).

[150]    11 U.S.C. § 707(a).

[151]    Id.

[152]    See In re Boyce, No. CIV.A.04-1369, 2006 WL 3061633, at *4 (E.D. Pa. Oct. 26, 2006); In re Jong Hee Kang, 467 B.R. 327, 335 (Bankr. D.N.J. 2012); In re Jabarin, 395 B.R. 330, 337 (Bankr. E.D. Pa. 2008); In re Aupperle, 352 B.R. 43, 45 (Bankr. D.N.J. 2005).

[153]    11 U.S.C. § 707(b)(1).

[154]    11 U.S.C. § 707(b)(3)(A); see also Tamecki v. Frank (In re Tamecki), 229 F.3d 205, 207 (3d Cir. 2000) (finding that a lack of good faith can constitute cause for dismissal under section 707(a)(1) prior to the 2005 amendments to the Bankruptcy Code).

[155]    11 U.S.C. § 707(b)(3)(B).

unfair advantage of one's creditors."[156]   Once a party challenges a debtor's good faith, the

burden shifts to the debtor to prove his good faith.[157]

If dismissal is warranted, section 349(a) permits the Court to dismiss the case with

prejudice to the filing of a subsequent petition.[158]   A lack of good faith is sufficient cause to

justify a dismissal with prejudice.[159]

Here, the Court finds that Usoroh sustained his burden of establishing cause for

dismissal.   Put simply, this case lacks any valid purpose.   Elliott has no assets and there is reason

to doubt that the few utility creditors he scheduled actually have claims against him.   In other

words, there is nothing to be administered, and likely nothing to be discharged.

Although the Court cannot discern a valid purpose to Elliott's case, an *improper*

one is apparent: to obtain an automatic stay of the ejectment proceedings and launch a collateral

attack on the final decisions of the state courts.   None of the motions and related filings had any

legal basis and they primarily advanced arguments that had been conclusively rejected.   And as

the Koger family's eighth bankruptcy case, the Court finds Elliott's to be merely the latest

chapter in Todd Sr.'s scheme to hinder legitimate collection and execution efforts.   For these

reasons, the Court finds that Elliott did not commence the case in good faith, that it constitutes an

abuse of the bankruptcy system, and dismissal is warranted.   Moreover, due to the abusive nature

of these proceedings, the Court will impose a one-year filing bar.

---

[156]   U.S. Tr. v. Kubatka (In re Kubatka), 605 B.R. 339, 367 (Bankr. W.D. Pa. 2019); see U.S. Tr. v. Campayno (In re Campayno), No. 21-22319-GLT, 2022 WL 1272578, at *5 (Bankr. W.D. Pa. Apr. 27, 2022).

[157]   In re Tamecki, 229 F.3d at 207.

[158]   11 U.S.C. § 349(a).

[159]   See In re Reppert, 643 B.R. 828, 847 (Bankr. W.D. Pa. 2022); In re Ward, 610 B.R. 804, 807 (Bankr. W.D. Pa. 2020); In re Stone Fox Cap. LLC, 572 B.R. 582, 591 (Bankr. W.D. Pa. 2017) (citing In re JER/Jameson Mezz Borrower II, LLC, 461 B.R. 293, 304 (Bankr. D. Del. 2011)).

      H.      <u>Reopening Todd Sr.'s Case Would be Futile</u>

Under section 350(b), "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."[160]  The burden is on the moving party to establish cause to reopen.[161]  The court enjoys broad discretion in making this determination,[162] but "[w]here it is futile or a waste of judicial resources to reopen the case, including when the movant cannot ultimately obtain the substantive relief [sought], there is no reason to grant the motion."[163]

For all the reasons stated above, Todd Sr. cannot obtain any of the relief he seeks by reopening his 2020 case.  The causes of action he wishes to pursue are either collateral attacks on prior decisions or are post-bankruptcy assets that were not part of his chapter 7 estate.  Since reopening this case would be an act of futility, the Court will deny Todd Sr.'s motion.[164]

## V.      CONCLUSION

In light of the foregoing, the Court will enter orders dismissing the adversary proceeding, dismissing Elliott's case with prejudice, and denying Todd Sr.'s motion to reopen.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: September 30, 2025           GREGORY L. TADDONIO
<u>Case administrator to mail to:</u>      CHIEF UNITED STATES BANKRUPTCY JUDGE
Elliott-Todd Parker Koger & Todd Elliott Koger

---

[160]      11 U.S.C. § 350(b).

[161]      <u>Burnett v. Janocha (In re Janocha)</u>, No. BR 06-20191-JAD, 2015 WL 128152, at *2 (Bankr. W.D. Pa. Jan. 8, 2015) (citing <u>In re Janssen</u>, 396 B.R. 624, 634 (Bankr. E.D. Pa. 2008)).

[162]      <u>See</u> <u>In re Lazy Days' RV Ctr. Inc.</u>, 724 F.3d 418, 423 (3d Cir. 2013); <u>In re Zinchiak</u>, 406 F.3d 214, 223 (3d Cir. 2005).

[163]      <u>Murphy v. U.S. Dep't of Educ. (In re Murphy)</u>, 547 B.R. 875, 879 (Bankr. W.D. Pa. 2016).

[164]      <u>See</u> <u>Minech v. Clearview Fed. Credit Union (In re Minech)</u>, 632 B.R. 274, 279–80 (Bankr. W.D. Pa. 2021).